Approved: _____     19MAG 7337
NICHOLAS W. CHIUCHIOLO
Assistant United States Attorney

Before:   HONORABLE DEBRA FREEMAN
          United States Magistrate Judge
          Southern District of New York      19MJ03200

------------------------------------x
                                    :
UNITED STATES OF AMERICA            :   COMPLAINT
                                    :
         - v. -                     :   Violation of 21 U.S.C.
                                    :   § 846
DANIEL MARTINEZ,                    :
     a/k/a "Marco,"                 :
                                    :   COUNTY OF OFFENSE:
              Defendant.            :   NEW YORK
                                    :
------------------------------------x

STATE OF NEW YORK          )  ss:
SOUTHERN DISTRICT OF NEW YORK  )

    JOHN FAHIM, being duly sworn, deposes and says that he is a Task Force Officer with the Department of Homeland Security, Homeland Security Investigations ("HSI"), and charges as follows:

COUNT ONE
(Narcotics Conspiracy)

    1.  From in or about July 2018, up to and including on or about August 6, 2019, in the Southern District of New York and elsewhere, DANIEL MARTINEZ, a/k/a "Marco," the defendant, and others known and unknown, intentionally and knowingly did combine, conspire, confederate, and agree together and with each other to violate the narcotics laws of the United States.

    2.  It was a part and object of the conspiracy that DANIEL MARTINEZ, a/k/a "Marco," the defendant, and others known and unknown, would and did distribute and possess with intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

    3.  The controlled substance that DANIEL MARTINEZ, a/k/a "Marco," the defendant, conspired to distribute and possess with

1

intent to distribute was 500 grams and more of mixtures and substances containing a detectable amount of methamphetamine, its salts, isomers, and salts of its isomers, in violation of Title 21, United States Code, Section 841(b)(1)(A).

(Title 21, United States Code, Section 846.)

The bases for my knowledge of the foregoing charge are, in part, as follows:

4. I am a Task Force Officer with HSI and I have been personally involved in the investigation of this matter. This affidavit is based upon my personal participation in the investigation, my examination of reports and records, and my conversations with other law enforcement agents and other individuals. Because this affidavit is being submitted for the limited purpose of demonstrating probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated. Where figures, calculations, and dates are set forth herein, they are approximate, unless stated otherwise.

5. Based on my participation in this investigation, including my review of reports and my conversations with other law enforcement officers and a cooperating witness ("CW-1")[1] working with law enforcement, I am aware of the following, in substance and in part:

   a. Beginning in or around July 2018—before CW-1 had been arrested and charged in this District—CW-1 began purchasing quantities of methamphetamine from DANIEL MARTINEZ, a/k/a "Marco," the defendant, whom CW-1 knew as "Marco," for distribution in Manhattan. Specifically, on or about July 6, 2018, in Los Angeles, California, CW-1 purchased from MARTINEZ what CW-1 believed to be approximately thirty pounds of

---

[1] CW-1 was previously indicted in this District for distribution of narcotics. CW-1 has agreed to cooperate with the Government's investigation in the hopes of receiving leniency at sentencing. Information provided by CW-1 has been corroborated, and law enforcement agents have deemed the information provided by CW-1 to be credible. In or about June 2019, CW-1 submitted urinalysis to pretrial services that tested positive for methamphetamine, which was a violation of the terms of CW-1's conditions of release.

methamphetamine. CW-1 then arranged for the methamphetamine to be shipped to New York, New York where CW-1 and others sold it to customers.

  b. On or about August 29, 2018, MARTINEZ again sold a large quantity of methamphetamine to CW-1. Specifically, based on my review of text messages between CW-1 and a cellphone believed to be used by MARTINEZ (the "Martinez Cellphone"), which messages were extracted from CW-1's cellphone, and my conversations with CW-1, I am aware that CW-1 and MARTINEZ met inside of MARTINEZ's vehicle in the vicinity of a hotel ("Hotel-1") located in West Hollywood, California. While inside of MARTINEZ's vehicle, which was driven by an unknown male, MARTINEZ sold CW-1 what CW-1 understood to be approximately fourteen pounds of methamphetamine. On or about August 30, 2018, CW-1 arranged for the methamphetamine to be shipped to New York, New York by United States Parcel Service.

  c. While it was in transit from California to Manhattan, law enforcement agents intercepted the package containing the suspected narcotics, and, pursuant to a judicially-authorized search warrant, searched the contents of the package. Law enforcement agents observed what appeared, based on their training and experience, to be crystalized methamphetamine. The suspected narcotics were subsequently tested in a Drug Enforcement Administration laboratory and weighed approximately fourteen pounds and tested positive for methamphetamine.

  d. CW-1 was subsequently charged in this District, arrested, and began cooperating with law enforcement.

  e. At the direction of law enforcement, beginning in or around January 2019, CW-1 began communicating with MARTINEZ using the Martinez Cellphone, through text messages and consensually recorded telephone calls, concerning a proposed narcotics transaction.

  f. Based on my review of a consensually recorded telephone call between CW-1—who, at the time, was located in Manhattan—and MARTINEZ, I am aware that the following conversation occurred, in substance and in part, on or about August 2, 2019:

| CW-1: | I'm coming out there this week for sure, for sure. Um because I gotta pick up this money in L.A. anyway. I'm in Manhattan right now, but I'm |
|---|---|

| | |
|---|---|
| | leaving here probably Monday or Tuesday, and I'll be out there. . . . But umm I can't really do like I was coming heavy before. I can probably do like 17 or maybe 18 of them things right now. That cool? |
| MARTINEZ: | My boy. Whatever you need, my boy. Just come through. I got them, my boy. Don't worry about it. You need those, I'll do you those. I got you. |
| CW-1: | I bet, yo. My buddy is gonna stay at the same spot that you usually always came to. Just please, yo, when I be out there just try not to have me waiting. I'm gonna be out there for less than a day. I'm shooting up to San Francisco that same night. So I gotta lot of shit lined up. |
| MARTINEZ: | Look. Let me know one day before you coming . . . |
| CW-1: | I'm gonna hit you back once I book my flight. All right, papi? |
| MARTINEZ: | All right, for sure. Just let me know one day before, and then I can get 'em that day and I can have them waiting, my boy. Because I just got like half of those. . . . |
| CW-1: | Nah, Nah, say less. I know what you mean; I know what you mean. |

    g.  Based on my training, experience, and conversations with CW-1, I believe that, in the conversation described above, CW-1 asked MARTINEZ for approximately 17 or 18 pounds of methamphetamine ("I can probably do like 17 or maybe 18 of them things"), and MARTINEZ agreed to the sale ("You need those, I'll do you those. I got you.").

    h.  Based on my review of text messages between CW-1 and MARTINEZ, I am aware that, on or about August 5, 2019, CW-1 texted MARTINEZ, "My boy I land tomorrow," and MARTINEZ responded, "Cool I'll be ready."

    i.  During a recorded telephone call, on or about August 6, 2019, CW-1 told MARTINEZ "I can actually do like

4

eighteen," and MARTINEZ responded, in substance and in part, "I got them right here my boy. Let me put them together and I'll be over there right now. Gimme like an hour," *i.e.*, approximately 2:00 p.m. (PST). MARTINEZ then asked CW-1, in substance and in part, to text MARTINEZ the address of the meeting location.

   j.   On or about August 6, 2019, at approximately 12:52 p.m. (PST), CW-1 texted MARTINEZ the address of Hotel-1.

   k.   Based on my review of cellphone location data obtained in real time from the service provider of the Martinez Cellphone, pursuant to a judicially-authorized warrant, I regularly monitored the location of the Martinez Cellphone on or about August 6, 2019. Based on that review and my conversations with other law enforcement officers, I am aware of the following, among other things:

      i.   For most of the day on August 6, 2019, the Martinez Cellphone was stationary, in the vicinity of West 49th Place in Los Angeles, where MARTINEZ is known to reside.

      ii.  At approximately 1:42 p.m. (PST), the Martinez Cellphone traveled towards East Los Angeles and then remained stationary in the vicinity of a Home Depot parking lot, between approximately 2:43 p.m. and 3:42 p.m. (PST). At approximately 3:37 p.m., law enforcement agents conducting physical surveillance in the vicinity of the Home Depot parking lot observed MARTINEZ inside of a champagne colored minivan ("Vehicle-1"), which was parked in the Home Depot parking lot. Agents then observed another vehicle with unknown occupants park adjacent to Vehicle-1, and then both vehicles departed the parking lot.

      iii. At approximately 3:37 p.m. (PST), MARTINEZ texted CW-1, in substance and in part, "I'm on my way."

      iv.  At approximately 3:42 p.m., the Martinez Cellphone began traveling toward Hotel-1.

   l.   On or about August 6, 2019, at approximately 4:20 p.m. (PST), CW-1 spoke with MARTINEZ by phone. During the call, which was recorded, MARTINEZ said, in substance and in part, "I'm like down the street my boy. I should be there right now."

  m. At approximately 4:45 p.m. (PST), law enforcement agents observed MARTINEZ inside Vehicle-1, which was parked on a street adjacent to Hotel-1.

  n. Law enforcement agents approached Vehicle-1 and spoke with MARTINEZ. MARTINEZ provided written consent to search Vehicle-1. While standing on the street next to Vehicle-1, law enforcement agents observed a black bag (the "Bag") inside of Vehicle-1 that contained multiple clear plastic bags with a white, crystalized substance inside of them.

  o. Law enforcement agents then searched Vehicle-1. During the search, they located, among other things, approximately eighteen individually-wrapped clear plastic bags containing a white, crystalized substance inside the Bag. Based on their training and experience, the law enforcement officers believed the substance to be crystalized methamphetamine.

  p. Following the arrest of MARTINEZ, law enforcement agents showed CW-1 a photograph of MARTINEZ. CW-1 identified MARTINEZ as the individual, known to CW-1 as "Marco," from whom CW-1 previously purchased narcotics in July and August 2018.

WHEREFORE, I respectfully request that DANIEL MARTINEZ, a/k/a "Marco," the defendant, be imprisoned or bailed as the case may be.

JOHN FAHIM
Task Force Officer
Homeland Security Investigations

Sworn to before me this
7th Day of August, 2019

THE HONORABLE DEBRA FREEMAN
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

6